### William Case v. John G. Erwin.

*Action for breach of covenant against incumbrances: Wifes premises: Notice of husband's contract: Implied consent: Notice to purchaser of existing equities.* On the 15th of September, 1854, Ralph Eley became patentee of a quarter section of land, embracing the premises in question, and on the 2d of October, 1855, united with his wife, Mary Eley, in a conveyance of the quarter to one Armenius Eley, who, on the next day, conveyed to said Mary Eley. The deed to Armenius Eley was recorded some thirteen days after its execution, but his deed to Mary Eley was not recorded till the 21st of November, 1859. Shortly after the deed to Mary Eley, and before December, 1855, Ralph Eley established his residence on the quarter, occupied it, erected buildings on it, and deported himself as the owner of the land. Under these circumstances, and while this state of things continued, Ralph Eley in June, 1856, entered into a written

CASE *v.* ERWIN.

agreement with defendant and one Catlin, providing that they should erect a steam saw-mill on the land, and that on its completion the former should convey the same to them.

The mill was erected according to the agreement, Mary Eley being fully aware of the existence of the agreement, of its provisions, and of such performance by defendant and Catlin, and neither suggesting any claims on her part or intimating any objection to what was going on or proposed. Shortly after the completion of the mill, and when by the terms of the agreement for its erection, defendant and Catlin had become entitled to a conveyance, Ralph Eley and Catlin fixed upon an arrangement which was never consummated, whereby the former was to have Catlin's half of the premises, and before this arrangement fell through, as it subsequently did, Mary Eley and her husband Ralph, conveyed the other undivided half to defendant and afterwards, and on the 25th of July, 1857, they mortgaged their interest in the property to one Goodrich, and stated in the mortgage that the mill was owned by the the mortgagors and "Catlin and Erwin." About July, 1860, by a decree in chancery against Ralph and Mary Eley designed to enforce the equitable rights of Catlin and Erwin under their contract for the erection of the mill, it was adjudged that the property in question belonged to the latter, and about the same time Erwin acquired Catlin's interest. On the 14th of January, 1861, Erwin conveyed the mill premises to the plaintiff in this suit, by deed containing the usual covenant of warranty and against incumbrances.

The Goodrich mortgage was foreclosed against Ralph and Mary Eley alone, and on May 24, 1861, the title resulting from the foreclosure became vested in one Jennings. Case having entered under his deed from Erwin held exclusive possession until September, 1861, when Jennings claiming under the mortgage title, went in without process, and claimed an undivided half of the premises. Case requested Erwin to protect him against this claim of Jennings which was refused, whereupon he purchased the Jennings claim and instituted this suit on the covenant in the deed against incumbrances.

*Held,* 1st, that Mrs. Eley, as the holder of the legal title, was not at liberty to assert any right against the equitable claim of Catlin and Erwin to a conveyance, and that both herself and husband were bound, on the completion of the mill and at the time of the Goodrich mortgage, to convey the premises pursuant to the mill contract.

2nd. That whatever interest Ralph Eley and wife still possessed was subject to the equities of Catlin and Erwin, and that this interest when conveyed by the mortgage was equally subject to such equities.

3rd. That the mortgage bore upon its face enough to indicate that Catlin and Erwin had some rights in or to the property, and also to indicate that whatever was conveyed by it, and whether subordinate or not to those rights, was to be ascertained by inquiry: that Goodrich, the mortgagee, was therefore chargeable with notice of the equities of Catlin and Erwin and bound by them, and that Jennings who held only under the mortgage was in the like position.

*Held,* further, that the establishment of the legal title in Catlin and Erwin by the decree in chancery on the foot of their equitable right ensured to them as against the mortgage as of the time when they became entitled to a conveyance under their contract; and the mortgage as an incumbrance, and subject to their equities, was altogether cut off.

*Heard May 5th. Decided May 12th.*

Case Made from Wayne Circuit.

This action was brought to recover damages for a breach of a covenant against incumbrances contained in a deed given by defendant to plaintiff.

Judgment was given for the defendant.
The facts are stated in the opinion.

*Ward & Palmer*, for plaintiffs.

Courts of equity do not compel persons to perform contracts to which they are not parties, and especially women, to convey their lands to carry out the agreements of their husbands.— *Weed v. Terry, 2 Doug. Mich. 344; Story's Eq. Juris.* § 732.

But if the agreement with Catlin and Erwin were such, that a court of equity would compel a specific performance of it, it does not follow that Goodrich would have been affected by it.

His mortgage was first recorded, and must have preference over their claim, unless they can show that he had such knowledge of it, as to make it fraudulent for him to accept a mortgage on it as against their claim.— *Greenleaf's Cruise on Real Prop. B. 4 p. 458-9; Goodfrey v. Disbrow, Walker, Ch. Mich. 260; Boggs v. Varnum, 6 Watts and Serg. 469; Mechan v. Griffin, 3 Pick. 149; Jackson v. Valkenburgh, 8 Cow. 260; Jackson v. Elston, 12 Johns. 452; Lawrence v. Tucker, 7 Greenl. 195; Dey v. Dunham, 2 Johns. Ch. 182; Norcross v. Widgery, 2 Mass. 509; Jackson v. Given, 8 Johns. 137; Fork v. Burch, 6 Barb. Sup. Ct. 60; 4 Kent's Comm. p. 171--2; Willard's Eq. Jur. 251--2--3-- 608.*

It is not insisted that Goodrich had any notice of Catlin & Erwin's claim, unless the phraseology of his mortgage was such notice, or sufficient to put him on inquiry.

The mortgage describes the parcel of land in these words: "Their interest in a steam saw mill and the appurtenances, situate, &c. and the piece or parcel of land on which the same stands, and described, etc.    *    * the aforesaid mill being owned by said party of the first part, and Catlin & Erwin, of Detroit."

Catlin & Erwin had taken from Ralph and Mary E. Eley conveyances of an undivided half of the premises, and put them on record, and had thus defined and given notice of their claim in the land, and a purchaser was not bound to inquire further.—*Bloomer v. Henderson, 8 Mich. Plummer v. Robertson, 6 Serg. & Rawle, 179.*

The conveyance to Goodrich was in effect a quit claim and release, which our statute provides "shall be sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale."

It will not be disputed that under a deed of bargain and sale, a good faith purchaser would have taken an undivided half of the mill premises; and the effect of this conveyance, under the provision of our statute, must be the same.—*2 Comp. L. § 2722; McConnell v. Reed, 4 Scam. (Ill.) 117.*

At common law, a quit claim and release only operated on any interest the grantor might actually have in the premises released, at the time of the conveyance, and such a view of the law might, perhaps, justify the decision in about the only cause holding a doctrine adverse to the position we have taken.—*Adams v. Caddy, 18 Pick. 463.*

At best, Catlin & Erwin were only entitled to a mortgage on the premises, and if it was allowed to take precedence of the mortgage executed to Goodrich, Goodrich's mortgage would still have been an incumbrance on the land, and the purchaser under it could have held the land and redeemed it from Catlin & Erwin's claim, or until his claim was divested by the foreclosure and sale under the mortgage, to which they would have been entitled, and under such a state of facts, the plaintiff would still be entitled to his damages.

*S. T. Douglass, & S. D. Miller,* for defendants.

This action is brought by Case against Irwin, to re-

cover damages for breach of a covenant against incumbran ces contained in a conveyance by Irwin to Case, of about fifteen acres of land, with a saw mill thereon, situated in Gratiot county. The conveyance was executed January 14, 1861.

The only question in the case is, whether, when this conveyance was executed, a certain mortgage, executed by Ralph and Mary Eley to one Goodrich, in July, 1857, was a valid incumbrance upon an undivided half of the premises.

The mortgage conveyed certain land specifically described, "and also their interest" (the interest of the grantors) "in a steam saw mill and appurtenances, situated in the town and county aforesaid, and the piece or parcel of land on which it stood, and described as follows," etc. "the aforesaid mill being owned by the said party of the first part, and Catlin & Irwin of Detroit."

1. As the mortgage purported to convey only the interest of the mortgagors without stating what that interest was, the mortgagee took only such legal title as the grantors had, subject to all subsisting equities in favor of third persons.—*Farrar v. Patton, 20 Mis. 81; Brown v. Jackson, 3 Wheat. 449; Adams v. Cuddy, 13 Pick. 463; Sweet v. Brown, 12 Metc. 175; McConnell v. Reed, 5 Ill. 117; Mills v. Shepard, 30 Conn. 98.*

2. As against the mortgagors, Catlin & Irwin were the equitable owners of the entire mill property when the mortgage was executed. They had become entitled to a conveyance of it as against Ralph Eley by building the mill in pursuance of the contract of purchase of June, 1856. And Mary Eley, in whom the legal title appears to have been vested, by allowing her husband to deal with the property as his own, and by standing by, and with full knowledge of what was being done, suffering Catlin & Irwin to build the mill upon it without objection, is estopped from con-

troverting their rights under the agreement of June, 1856. —*Dunn v. Cudney, 13 Mich. 239.*

3. Goodrich was chargeable with notice of all the rights of Catlin & Irwin. The mortgage on its face showed that C. & I. had some interest in the property, without describing the extent of it. He was bound to inquire what that interest was.

GRAVES, J.

This is an action to recover damages upon the covenant against incumbrances, contained in a deed given by the defendant to the plaintiff.

The material facts are as follows:

On the 15th of September, 1854, Ralph Eley became patentee of the north half of the north-east quarter of section three, town eleven north, range three west, in Gratiot county. On the 2d of October, 1855, the patentee and Mary Eley his wife, united in a warranty deed of the same land to Armenius Eley, which deed was recorded on the 15th of the same month, and on the 3d of said month, the last named grantee, Armenius Eley, conveyed the premises to the before mentioned Mary E. Eley; but this grant remained unrecorded until the 21st of November, 1859.

Shortly after these conveyances in the fall of 1855, which had for their object the vesting of the title in Mrs. Eley and prior to December, 1855, her husband, the said Ralph Eley, took up his residence on said land, having erected thereon several buildings shortly before.

While the title was in this state, and while Ralph Eley was in the actual possession of the premises, and conducting himself as the owner, the defendant and one Catlin in June, 1856, entered into a written contract with Ralph Eley, which provided that defendant and Catlin should erect a steam saw mill on the land, and that when completed, Ralph Eley should convey the same to them.

It becomes necessary at this point to notice a question made on the argument as to the meaning of a passage in the case as settled.

The passage is as follows: "A mill was erected according to the terms of said contract, at an expense of about $6,000, with the full knowledge of said Mary, who made no objection."

It was urged on the part of the plaintiff, that the fact expressed by this statement was that Mrs. Eley in the first instance knew that defendant and Catlin were building the mill, but that it did not shew that she knew the terms on which they were building it.

The counsel for the defendant controverted this view, and insisted that this paragraph in the case, meant that Mrs. Eley had knowledge that the mill was built, and also had knowledge that it was done according to the terms of the contract made with her husband. We are satisfied that this position of the counsel for defendant is correct. It would be a forced construction of this language to confine the reference of Mrs. Eley's knowledge to the putting up of the mill. If we were to reject any antecedent, it would be quite as reasonable to exclude that which specifies the erection of the mill, as that which alludes to the terms of the contract. But we think we ought to apply what is said of her knowledge to all the preceding branches of the passage to which according to common understanding, is would naturally apply; and if we read the paragraph in question in this manner, we shall find it ascertained that she knew of the existence of the contract, and of its provisions, and of the erection of the mill under, and in accordance therewith.

It appears, therefore, by the record, that at this time, Ralph was in possession of the land, and acting as the owner. That the mill having been built under the contract

with him, with the knowledge of Mrs. Eley, who held the legal but unrecorded title, while her husband was in possession, and by her allowed to deal with the property, and appear to the world, as the owner, and when, according to the contract between the husband and Erwin and Catlin, the latter had become entitled to a conveyance, an arrangement was fixed upon between Catlin and Ralph Eley, whereby the latter was to have half of the mill premises, being about fifteen acres, upon certain terms stated between them.

This arrangement was never consummated, but on the 30th of September, 1856, and before it was given up or rejected, Ralph Eley and his wife Mary conveyed to defendant Erwin an undivided half of the property by deed, recorded October 13, 1856; and on the 30th of the December following, the defendant conveyed to Catlin an undivided half of the undivided half which had been conveyed to him, and such deed was recorded January 6th, 1857.

Under these circumstances, and while the parties were in this position, Ralph Eley and wife, on the 25th of July, 1857, executed to Goodrich their mortgage on several parcels of land definitely and specifically described, and likewise included in the mortgage what the plaintiff claims to have been an undivided half of the mill property. It was described as the interest of Ralph Eley and Mary E. Eley, in a steam saw-mill and appurtenances, and the piece or parcel of land on which it stood, and as being owned by the mortgagors, and Erwin and Catlin of Detroit.

In July, 1860, or shortly after that time, Erwin and Catlin became vested with whatever title or right Ralph and Mary E. Eley had to the property, through a decree of the Court of Chancery, and it would seem that Erwin acquired the interest of Catlin in the premises about the same period.

The Goodrich mortgage was foreclosed against Ralph

18 MICH.—D.[4]

and Mary E. Eley, and the title resulting from that fore-closure became vested in one Jennings on the 24th of May, 1861; but on the 14th of January preceding, the defendant conveyed the mill premises to plaintiff by deed containing the usual covenant of warranty and against incumbrances.

Under this conveyance the plaintiff entered the premises and held exclusive possession thereof until September, 1861, when Jennings, claiming under the mortgage title, went in without process, and claimed an undivided half under the title arising from the mortgage. The plaintiff requested the defendant to protect the premises against this claim of Jennings, but he refused to do so on the ground that the mortgage title was not an incumbrance as against the title he had conveyed to plaintiff. The latter thereupon pur-chased the Jennings claim of title under the mortgage and commenced this suit, and the court below held that the claim under the mortgage constituted no incumbrance against the title conveyed by defendant to plaintiff, and ac-cordingly awarded judgment to the former.

At the time the Goodrich mortgage was made, Erwin and Catlin had performed the contract made with Ralph Eley, for building the mill, and by the terms of that con-tract were entitled to a conveyance, and the only ground for a refusal to convey which could have been set up was that Mrs. Eley held the legal title instead of her husband, and was not a party to the contract. Her deed was unrecorded. Her husband was in possession and with her knowledge, and, so far as appears, without her dissent, managing and disposing of the property as owner. He contracted for the erection of valuable buildings upon the property and agreed that upon their completion they should be conveyed to the parties with whom he contracted. Mrs. Eley allowed Erwin and Catlin to go on and expend their money in making the improvements contracted for by the husband, in reliance upon these appearances, which must inevitably have led them, as prudent and careful men, to believe that her hus-

band was acting for himself in respect to property interests of his own, and which he could control and bind. It does not appear that she gave any warning whatever to Erwin and Catlin or either of them, or to any one else, of any claim of her own, or that she in any manner intimated that her husband's dealings were unauthorized; but it does appear that she afterwards joined with her husband in deeding one-half of the premises to defendant, a transaction which can only be explained in view of all the facts, and particularly the unfinished arrangement for vesting half of the property in Ralph and leaving the other half for defendant and Catlin, by supposing that the deed to defendant was intended as a compliance with that part of the old agreement for building the mill, as proposed to be modified by the new unfinished arrangement, which left but half of the property to be conveyed for the benefit of Erwin and Catlin. This explanation, if sound, would warrant the inference that the giving of that deed was an act by Mrs. Eley in part performance of the contract made by her husband, and conclusive of her knowledge of that contract.

Such had been her course, and such the circumstances that she could not have withheld a conveyance under the contract without a violation of the plainest equity. According to the fact stated in the case she had seen Erwin and Catlin expend their money in valuable erections on her land, when she knew that they were doing so upon such representations of her husband as must operate as a gross fraud upon them if she should be allowed to retract the corroboration of the truth of such representations, which was involved in her acquiescence in his conduct, with full knowledge of the facts.

If Mrs. Eley had been unmarried there can be no question but that she would have been bound by her acquiescence in what took place. And under our statute which allows married women to " contract, sell, transfer, mortgage and convey their separate property in the same manner and with

the like effect as if unmarried," I think the result must be the same. To hold otherwise would contradict the purpose of this statute, and impose or retain a disability, which, in general, could have no other effect than to cover fraud and injustice.

It is not improper to say that it does not appear that Mrs. Eley ever refused to join in conveying to defendant and Catlin, on the ground that she was not bound to convey; or, indeed, on any ground.

In view of the circumstances, we are of opinion that at the time the Goodrich mortgage was given, Mrs. Eley and her husband were in equity bound to convey to Erwin and Catlin; and that as against the former, the latter were the equitable owners of the whole mill property.

The mortgage purported on its face to convey an indefinite interest in the premises, not exceeding that possessed by the mortgagor, and did not profess to transfer the whole or any particular portion of the premises in question, or any specific undivided interest. It assumed to grant several other parcels of land, and those were definitely particularized and described, but in describing the subject of the mortgage in the mill premises, the parties carefully avoided the use of expressions which would denote a purpose to grant anything beyond the actual interest of the mortgagors. If it had been the purpose of the parties to make the mortgage in terms include a specific parcel of the mill premises, or any definite undivided interest, there could have been no difficulty in finding terms which would have plainly identified the portion or interest on the face of the instrument. It cannot be claimed, therefore, that the description found in the instrument should be read as specifying a definite or ascertained interest, such as an undivided half or the like; but it must be taken as meaning to convey the right which the mortgagor had, and subject to all existing equities. There was enough upon the face of the instrument to inform Goodrich that Erwin and Catlin had some interest,

and that the right or title of the mortgagors, or the extent of it, was to be ascertained by inquiry, since the instrument did not purport to state it. The mortgagee was under these circumstances bound to make inquiries of Erwin and Catlin, and was chargeable with notice of all the facts to which such inquiries must have led. As he was chargeable with notice of the equities of Erwin and Catlin, his right became subject to those equities, and Jennings, who succeeded to the rights of Goodrich, could be in no better position than Goodrich himself.

When Erwin and Catlin succeeded in perfecting their title through the decree in Chancery, it enured to them as against the mortgage, as of the time when they became completely entitled to a conveyance, and the mortgage, as affecting the mill property, was cut off altogether. The judgment below should be affirmed, with costs.

The other Justices concurred.